The circumstances are fully stated in the opinion of the Court, which was prepared by
R. E. PARKER, J.
*The Defendant was indicted in the Superior Court of Loudoun, for sending one Doctor John Rust, a challenge to fight a duel. The Indictment was drawn after a form to be found in Robinson’s Collections, c. 10, 4 38, and is precisely like it, names, &c. being changed. It charges, that the Defendant being a person of malicious disposition, and a common duellist, and disturber of the peace, &c. on the 21st day of March, in the year 1822, with force and arms, and within the jurisdiction, Sic. wickedly and maliciously intending, &c. not only to disquiet and terrify the said Rust, but also the said Rust maliciously, &c. to kill and murder, &c. afterwards, to wit, on the said 21st day of March, in the year 1822, with force and arms, &c. did unlawfully and wickedly provoke and excite the said Rust to fight a duel against him the said Brown, with pistols loaded with powder and bullets of lead, and that he the said Brown, a certain challenge, in the name of the said Brown, in the form of a letter, to the said Rust directed, did then and there wickedly write, and cause to be written, which said challenge, so as aforesaid written, and directed, he the said Brown afterwards, to wit, &c. maliciously and wickedly to the said Rust did send and deliver, and cause to be sent and delivered, to the great damage, &c. and against the peace, &c.
On this Indictment, Brown was convicted, and fined by the jury: whereupon, he moved the Court for a new trial, on the ground that one of the jurymen had made up an opinion of his guilt before the trial, and admitted it afterwards in a conversation with some young gentlemen, who were questioning him as to the propriety of the yer-dict. This conversation was a very loose one, appears not to have been of a serious character, was had in consequence of the verdict’s being questioned, rather improp *348 erly, and upon the whole, was entitled to little weight. The juryman himself, who was admitted to be intelligent, and highly respectable, expressly swears that his judgment was not influenced by the reports he had previously heard, but by the testimony only. The motion for a new trial was overruled, we think correctly, and judgment entered against the Defendant, to which he obtained a Writ of Error at a former Term of this Court, principally on the ground of the insufficiency of the Indictment; and the Case having been fully and ably argued at this Term, stands ready for judgment.
*The objection to the Indictment is, that as it charges the challenge to have been a written one, it ought to have set out the writing, or letter, verbatim, and that this defect is fatal, even after verdict. To maintain this position, the Case of The King v. Nield and others, 6 East, 417, is principally relied on, particularly the words used by Lord Ellenborough, that where an offence consists in words, or writing, a general and compendious method of describing it has in no case been deemed sufficient, without stating the words or writing necessary to constitute the offence.
This seems to be only a different mode of stating a rule applying to indictments, universally admitted to be true. That rule is, that where words spoken or written, form a part of the gist of the offence charged, and enter so into its essence, that it cannot exist without them, they must be set out verbatim. Thus, in Indictments for forgery, lible, the sending of threatening letters containing a particular kind of threats as set out in the English Statute, or for not obeying the order of Justices of the Peace, or not executing their Warrant; (which order and Warrant, must be in writing) the words or written instruments, must be set out, in order that the Court may see that they are of a character condemned by the Eaw, or the disobeying or refusal to execute which, will be followed by any punishment. In these Cases, the words or writings are not only evidences of the offence, but are so essential to it, that without them, there is no offence. But in other cases where the offence may consist of words spoken or written, or of ' acts; ' and where, if writings are alluded to in an Indictment, they are only relied on as proofs, or evidences of the fact charged, and not as in themselves, constituting the offence, it is not necessary to set them out verbatim, but describing them in a general manner, is sufficient. Archbold, 19. Thus in perjury, it is not necessary to set out the affidavit, answer or other written oath on which the perjury is assigned. In larceny of written instruments, it is not necessary to set them out; and in treason, if letters or other written instruments be laid as overt acts, it is sufficient to set forth the substance of them; for the. gist of the offence is the compassing, and the letters are but proofs or evidences of it. Ib. On the same principle, the Case of the King v. Fuller, reported in 1 Bos. and Puller, 180, and 1 East, P. C. 92, and cited in 6 East, 424, was decided. The Statute of 37 Geo. 3, ch. 70, made the endeavour to *seduce soldiers and sailors from their duty and allegiance, an offence. The preamble states “That whereas, divers wicked and evil disposed persons, by publication of written or printed papers, and by malicious and advised speaking, have of late, industriously endeavoured to seduce,” &c. It was argued, that the endeavour to seduce, was to be by the publication of written or printed papers, or by speaking malicious and advised words, which ought therefore to be set out verbatim. But it was decided, that the general charge in the Indictment, that the Defendant maliciously endeavoured to seduce, without setting out the evidence, whether written, verbal or otherwise, by which that. endeavour was effected, was sufficient, because it was considered, that the endeavour to seduce, might consist of a variety of acts, all originating in the same purpose, or tending to the same conclusion, and forming' altogether the offence described by the word endeavour, and therefore, it was sufficient to describe it by the same word in an Indictment.
By the Common Law, (and this Indictment is one at Common Law,) the giving or sending a challenge to fight a duel, is an offence. It may consist, not only of words or writings, but of acts; and of various acts altogether forming the offence described, of giving or sending a challenge. The words, writings or acts, are in themselves no offence, but only evidences or proofs of one, and the offence may exist without words spoken or written. Erom these considerations, we should be led to infer, that no authority could be found, requiring, that in an Indictment for sending a challenge, the evidence of the offence, if it happened to consist in a letter, should necessarily be set out verbatim; nor has any such been produced. Chitty says, that the Indictment for this offence generally, sets forth the letter or expressions charged as criminal. 2 Chitty’s Cr. Law, part 2; Peters’ edi. p. 615, n. w. But he does not pretend, that it is essential, as in other Cases which he has noticed; and in fact, there are forms to be found in Crown Circuit Companion, p. 103, and in Chitty 2 vol. p. 2, P. 616, charging generally, the offence of sending a challenge to fight a duel, without stating the quo modo, and also the challenging by opprobrious words, and threatening language, without setting out the words or language. Nay, further, in every precedent of an Indictment given by Chitty, for sending a written challenge, although the first *Count sets forth the latter, there are other Counts introduced, which charge the challenge as in the Case at Bar, to have been “by a letter or writing,” and do not state it in any other manner. The Counsel for the Defendant, seemed to think, that these other Counts, only stated the offence generally, of sending a challenge, which might be sufficient, as a challenge did not neces *349 sarily consist in words spoken or written ; but that if on its face, it charged the facts of a written challenge, that would alter the Case. But it may in the first place be remarked, that as each particular Indictment is governed by certain rules, if it is not perceived how its form ought to depend upon the proofs or evidences ascertaining the offence, being of one kind or another; a distinction for which no warrant is to be found in the authorities; and in the next place, that he is mistaken in point of fact. Now, as every Count in an Indictment, is to be taken separately, and should be in itself sufficient to warrant a judgment without deriving aid from any other; we regard the forms given by the English Pleaders, as evidences of the Raw from which we ought not lightly to depart, especially in the absence of any opposing authority, and when, by a different decision, so many offenders might escape punishmnt, for the want of setting out the verbal or written challenge, which the Attorney for the Commonwealth, could so rarely command. Erom these considerations, therefore, without considering what effect the verdict ought to have, in repelling this objection, the Court is unanimously of opinion to affirm the judgment of the Superior Court of Roudoun.